DECISION
{¶ 1} This original action in mandamus was, pursuant to Civ.R. 53, referred to a magistrate who has rendered a decision denying relator's requested writ of mandamus. (Attached as Appendix A.)
 {¶ 2} No objections have been filed to the magistrate's decision. Relator, in his complaint, alleged that he sustained injuries while employed by respondent, The Timken *Page 2 
Company which was recognized by the Ohio Bureau of Workers' Compensation for right shoulder strain. He further alleges that, on January 18, 2005, he filed an application for temporary total disability ("TTD") compensation which was denied by the Industrial Commission of Ohio ("commission") on July 5, 2005. He alleges this denial to be a gross abuse of discretion and seeks a writ of mandamus ordering the commission to grant his application for TTD.
 {¶ 3} The magistrate heard the matter upon stipulated evidence and briefs and concluded that the evidence did not demonstrate either an abuse of discretion on the part of the commission or a legal right to TTD compensation sought by relator.
 {¶ 4} Both the district hearing officer and the staff hearing officer denied relator's claim because the evidence did not show that relator's TTD was caused by allowed conditions but, instead, were caused by non-allowed conditions and because the claims for TTD compensation were not filed within two years after the occurrence of TTD as required by R.C. 4123.52.
 {¶ 5} After an independent review of the evidence, we find that the magistrate correctly found that since the application was not filed until more than two years after the alleged TTD period, namely from February 4, through November 6, 2002. Even if this were not the situation, there was medical evidence supporting the commission's determination that relator's right shoulder complaints were non-occupational in nature at least as to the TTD period from December 7, 2002 through April 16, 2003.
 {¶ 6} Relator did later file a request for reconsideration because of allegedly newly discovered evidence that respondent Timken had paid relator's Sickness and Accident Benefits during a portion of the claimed periods of TTD. The magistrate *Page 3 
examined this contention of relator and correctly found that relator had not demonstrated as a matter of law that he had exercised due diligence in timely obtaining the evidence claimed to be newly discovered and had not shown an abuse of discretion on the part of the commission in denying relator's request for reconsideration because of allegedly newly discovered evidence.
 {¶ 7} For the forgoing reasons, the decision of the magistrate is adopted as that of the court and the requested writ of mandamus is denied.
Writ of mandamus denied.
BRYANT and McGRATH, JJ., concur.
 WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution. *Page 4 
 (APPENDIX A) MAGISTRATE'S DECISION {¶ 8} In this original action, relator, Roger Buzzo, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him temporary total disability ("TTD") compensation beginning February 4, 2002, and to enter an order granting said compensation. *Page 5 
 Findings of Fact:
 {¶ 9} 1. On December 2, 1993, relator sustained an industrial injury while employed as a machine operator for respondent The Timken Company ("Timken"), a self-insured employer under Ohio's workers' compensation laws. The industrial claim is allowed for "right shoulder strain," and is assigned claim number 93-800043.
 {¶ 10} 2. On August 5, 2002, relator underwent right shoulder surgery for a condition not allowed in the claim.
 {¶ 11} 3. On November 2, 2004, Mark J. Shepard, M.D., who is employed at Spectrum Orthopaedics, Inc. ("Spectrum"), completed a C-84. On the C-84, Dr. Shepard certified a period of TTD from August 5, 2002 to April 16, 2003. Near the date April 16, 2003, Dr. Shepard wrote "retired."
 {¶ 12} The C-84 form asks the physician to: "List ICD-9 Codes with narrative diagnosis(es) for allowed conditions being treated which prevent return to work." In response, Dr. Shepard wrote: "726.2."
 {¶ 13} 4. ICD-9 code 726 identifies:
 Peripheral enthesopathies and allied syndromes
 Note: Enthesopathies are disorders of peripheral ligaments or muscular attachments.
 ICD-9 code 726.2 identifies:
 Other affections of shoulder region, not elsewhere classified
 Periarthritis of shoulder
 Scapulohumeral fibrositis
 ICD-9 code 840 identifies:
 Sprains and strains of shoulder and upper arm *Page 6 
 ICD-9 code 840.9 identifies:
 Unspecified site of shoulder and upper arm
 Arm NOS
 Shoulder NOS
 {¶ 14} 5. On November 12, 2004, Robert C. Erickson, M.D., who is also employed at Spectrum, completed a C-84. On the C-84, Dr. Erickson certified a period of TTD from February 4, 2002 to an estimated return-to-work date of August 5, 2002. The C-84 form requests that the physician: "List ICD-9 Codes with narrative diagnosis(es) for allowed conditions being treated which prevent return to work." In response, Dr. Erickson wrote: "frozen shoulder bilateral."
 {¶ 15} 6. On November 12, 2004, Dr. Erickson also completed a MEDCO-14 form captioned "Physician's Report of Work Ability." On this form, Dr. Erickson certified that relator was "totally disabled from work" from February 4 to August 5, 2002. This form also asks the physician: "List ICD-9 codes for the allowed conditions being treated which prevent return to work." In response, Dr. Erickson wrote: "bilateral frozen shoulders."
 {¶ 16} 7. On January 18, 2005, citing the November 2, 2004 C-84 from Dr. Shepard and the November 12, 2004 C-84 and report of work ability from Dr. Erickson, relator moved for TTD compensation beginning February 4, 2002 through April 16, 2003. Relator's motion was on form C-86. The C-86 was signed by relator on December 3, 2004, and apparently transmitted to Timken's third-party administrator ("TPA") on December 7, 2004. *Page 7 
 {¶ 17} 8. Following a May 4, 2005 hearing, a district hearing officer ("DHO") issued an order denying relator's January 18, 2005 motion. The DHO's order explains:
 The District Hearing Officer denies the request for payment of Temporary Total compensation for the period of 02/04/2002 through 12/06/2002. The basis of this finding is that the Injured Worker did not request this period of Temporary Total compensation within two years of the period of Temporary Total disability as required by O.R.C. 4123.52. The District Hearing Officer denies Temporary Total for the period of 12/07/2002 through 04/16/2003 as the 11/12/2004 C-84 of Dr. Robert Erickson relates this period of disability to conditions non-allowed in the claim. There is insufficient medical proof to causally relate this period of disability to the allowed strain. All proof on file was reviewed and considered.
 {¶ 18} 9. Relator administratively appealed the DHO's order of May 4, 2005.
 {¶ 19} 10. Following a July 5, 2005 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order. The SHO's order explains:
 The Staff Hearing Officer denies claimant's oral request for a continuance of today's hearing, in order to obtain medical records, as untimely and not indicative of extraordinary circumstances.
 The Staff Hearing Officer denies the request for payment of temporary total disability compensation for the period 02/04/02 to 04/16/03. The period of 02/04/02 to 12/06/02 is barred as not having been alleged within two (2) years of application. The period 12/07/02 to 04/16/03 is denied as Dr. Erickson cites non-allowed conditions as the basis for disability. Claimant underwent right shoulder surgery on or about 08/02/02 [sic] for conditions not recognized in this claim. Per claimant's testimony, a significant change in his right shoulder condition took place in 2001, while working with a magnetic chuck. Thereafter claimant's use of his shoulder was dramatically reduced. *Page 8 
 {¶ 20} 11. On July 23, 2005, another SHO mailed an order refusing relator's administrative appeal.
 {¶ 21} 12. On August 8, 2005, relator moved for reconsideration of the SHO's order mailed July 23, 2005.
 {¶ 22} 13. In his memorandum in support of reconsideration, relator alleged that he had acquired newly discovered evidence that requires the commission to grant his motion for reconsideration.
 {¶ 23} 14. In support of reconsideration, relator submitted evidence that on July 1, 2005, just four calendar days prior to the July 5, 2005 hearing, relator's counsel faxed to Timken's counsel a request for Timken records showing the payment of "sickness and accident" benefits. July 1, 2005 fell on a Friday. The July 5, 2005 hearing fell on a Tuesday, the day following the Independence Day holiday.
 {¶ 24} 15. In support of reconsideration, relator submitted evidence that on July 12, 2005, Timken's counsel produced the requested records showing Timken's payment of so-called "sickness and accident" benefits to relator for the period February 9, 2002 to April 19, 2003.
 {¶ 25} 16. In support of reconsideration, relator also submitted a copy of a DHO's order issued after a February 26, 2002 hearing in another industrial claim (No. 01-877184) filed by relator. That other industrial claim involved an alleged November 1, 2001 right shoulder injury. The DHO's order of February 26, 2002, denies the allowance of the claim and explains: *Page 9 
 It is the finding of the Hearing Officer that the claimant did not sustain an injury in the course of and arising out of employment.
 This order is based on the 12/12/2001 and 01/09/2002 office notes of Dr. Reichert which state that the claimant's shoulder problems are non-occupational.
 In addition, the 01/17/2002 office note and 02/22/2002 report of Dr. Schneider describe the claimant's shoulder problems as an "exacerbation" rather than as a distinct new injury.
 Therefore, this claim is disallowed.
 {¶ 26} 17. Citing the DHO's order of February 26, 2002 denying the allowance of the claim in claim number 01-877184, relator asserted in his memorandum in support of reconsideration that Timken had argued that the alleged November 1, 2001 injury was an exacerbation of the December 2, 1993 injury. Based on that assertion, relator argued that Timken was estopped from claiming that the requested period of TTD compensation in claim number 93-800043 was not causally related to the allowed right shoulder sprain.
 {¶ 27} 18. On August 27, 2005, the commission mailed an order denying relator's August 8, 2005 motion for reconsideration.
 {¶ 28} 19. On January 26, 2006, relator, Roger Buzzo, filed this mandamus action.
Conclusions of Law:
 {¶ 29} With respect to the SHO's order of July 5, 2005 denying TTD compensation from February 4, 2002 through April 16, 2003, two separate issues are presented with respect to two time periods: (1) does R.C.4123.52 bar compensation for *Page 10 
the back period in excess of two years prior to the date of the filing of the application, i.e., from February 4 through December 6, 2002; and (2) for the period from December 7, 2002 through April 16, 2003, is the denial of compensation supported by some evidence upon which the SHO relied?
 {¶ 30} With respect to the SHO's order of July 5, 2005, the magistrate finds: (1) R.C. 4123.52 bars compensation for the back period in excess of two years prior to the date of the filing of the application, i.e., from February 4 through December 6, 2002; and (2) for the period from December 7, 2002 through April 16, 2003, the denial of compensation is supported by some evidence upon which the SHO relied.
 {¶ 31} With respect to the commission's order mailed August 27, 2005, the issue is whether the commission abused its discretion in denying relator's motion for reconsideration. The magistrate finds that the commission did not abuse its discretion by denying reconsideration.
 {¶ 32} Accordingly, as more fully explained below, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 {¶ 33} With respect to the SHO's order of July 5, 2005, the magistrate shall begin with the second issue, i.e., the period December 7, 2002 through April 16, 2003. It should be noted that December 7, 2002 is the date marking the two-year period prior to relator's transmittal of his C-86 motion to Timken's TPA. Apparently, April 16, 2003 is the date relator retired from Timken. Again, the issue is whether the SHO relied upon some evidence to support denial of TTD compensation for this time period.
 {¶ 34} The SHO's order of July 5, 2005 again explains: *Page 11 
 * * * The period 12/07/02 to 04/16/03 is denied as Dr. Erickson cites non-allowed conditions as the basis for disability. Claimant underwent right shoulder surgery on or about 08/02/02 [sic] for conditions not recognized in this claim. * * *
 {¶ 35} Clearly, Dr. Erickson's C-84 and his Physician's Report of Work Ability, both dated November 12, 2004, do not constitute evidence of TTD because Dr. Erickson premises his certification of TTD on a nonallowed condition. On his C-84, Dr. Erickson relies upon "frozen shoulder bilateral." On his Physician's Report of Work Ability, Dr. Erickson relies upon "bilateral frozen shoulders." The industrial claim is not allowed for a frozen shoulder. Moreover, the claim is only allowed for a condition of the right shoulder.
 {¶ 36} It is settled that nonallowed conditions cannot be used to advance or defeat a claim for compensation. State ex rel. Waddle v.Indus. Comm. (1993), 67 Ohio St.3d 452. The mere presence of a nonallowed condition in a claim does not itself destroy the compensability of the claim, but the claimant must meet his burden of showing that an allowed condition independently caused the disability.State ex rel. Bradley v. Indus. Comm. (1997), 77 Ohio St.3d 239, 242.
 {¶ 37} Clearly, Dr. Erickson failed to certify that the allowed condition "right shoulder strain" independently causes TTD. Thus, relator's submission of the reports of Dr. Erickson to support his motion for TTD compensation failed to advance his burden of establishing a prima facie case for TTD.
 {¶ 38} Unfortunately, the SHO's order of July 5, 2005 fails to address Dr. Shepard's C-84 dated November 2, 2004, which relator also cited as support for his motion. However, because Dr. Shepard fails to certify on the C-84 that an allowed *Page 12 
condition independently causes TTD, it also fails to advance relator's burden of establishing a prima facie case for TTD.
 {¶ 39} As previously noted, Dr. Shepard wrote "726.2" in response to the C-84's request that he "List ICD-9 Codes with narrative diagnosis(es) for allowed conditions being treated which prevent return to work."
 {¶ 40} ICD-9 code 726.2 identifies a nonallowed condition. Clearly, Dr. Shepard's C-84 fails to provide evidence of TTD.
 {¶ 41} In short, because all of relator's medical evidence fails to establish TTD, relator's medical evidence, in effect, becomes the some evidence supporting denial of his motion.
 {¶ 42} Given that relator failed to provide any medical evidence that even facially meets his burden of showing TTD, any issue as to the applicability of R.C. 4123.52 is rendered moot.
 {¶ 43} Nevertheless, R.C. 4123.52 states in part: "The commission shall not make any modification, change, finding, or award which shall award compensation for a back period in excess of two years prior to the date of filing application therefor."
 {¶ 44} According to relator, that Timken paid sickness and accident benefits to relator for the period February 9, 2002 to April 19, 2003, is evidence that Timken was "on notice of Relator's temporary total disability and that action for such was not a `surprise.' " (Relator's brief, at 8.)
 {¶ 45} As previously noted, the SHO apparently determined that the application for TTD compensation was filed on December 7, 2004, the date that relator transmitted *Page 13 
the C-86 to Timken's TPA. Thus, the SHO selected December 7, 2004, rather than January 18, 2005, as the date of the filing of the application.
 {¶ 46} Under R.C. 4123.52, had relator met his burden of submitting medical evidence showing that the allowed condition independently caused his disability, and had the SHO determined to rely upon that medical evidence, then the commission would have had to apply the two-year limitation period to the award of compensation. See State ex rel. Adamsv. Aluchem, Inc., 104 Ohio St.3d 640, 2004-Ohio-6891.
 {¶ 47} As previously noted, with respect to the commission's order mailed August 27, 2005, the issue is whether the commission abused its discretion by denying relator's motion for reconsideration.
 {¶ 48} In support of reconsideration, relator cited commission resolution R98-01- 03, which states in part:
 1. A request for reconsideration shall be considered only in the following cases:
 a. New and changed circumstances occurring subsequent to the date of the order from which reconsideration is sought. For example, there exists newly discovered evidence which by due diligence could not have been discovered and filed by the appellant prior to the date of the order from which reconsideration is sought. Newly discovered evidence shall be relevant to the issue in controversy but shall not be merely corroborative of evidence that was submitted prior to the date of the order from which reconsideration is sought.
 b. There is evidence of fraud in the claim.
 c. There is a clear mistake of fact in the order from which reconsideration is sought. *Page 14 
 d. The order from which reconsideration is sought contains a clear mistake of law of such character that remedial action would clearly follow.
 e. There is an error by the inferior administrative agent or subordinate hearing officer in the order from which reconsideration is sought which renders the order defective.
 {¶ 49} In his motion for reconsideration, relator claimed new and changed circumstances occurring subsequent to the date of the SHO's order. Specifically, relator claimed that Timken had belatedly provided him newly discovered evidence when, after the July 5, 2005 hearing, it produced its records of payment of sickness and accident benefits. Here, relator claims that the commission abused its discretion by failing to grant reconsideration.
 {¶ 50} Clearly, as the recipient of the sickness and accident benefits, relator had to have known of the potential existence of the Timken payment records long before his counsel actually transmitted a request for such records on July 1, 2005 — just five calendar days prior to the SHO's hearing. Relator offers no explanation for his delay in seeking the records.
 {¶ 51} Under such circumstances, while relator did not actually have possession of the records until after the July 5, 2005 hearing, he has no claim that by due diligence he could not have discovered and filed the records by the hearing date. Clearly, relator failed to exercise due diligence in seeking the records. He was therefore not entitled to reconsideration based upon his acquiring of the records after the hearing date.
 {¶ 52} Relator also argued in his motion for reconsideration that Timken was estopped from claiming that the requested period of TTD compensation was not *Page 15 
causally related to the allowed right shoulder condition. According to relator, Timken had successfully argued in the other industrial claim that the claim should be disallowed because the alleged injury was merely an exacerbation of the 1993 injury.
 {¶ 53} Clearly, relator is not entitled to reconsideration so that he can argue this issue when he has failed to raise the issue in a timely manner before the DHO or the SHO. Reconsideration is not designed for the convenience of a party who simply fails to raise an issue at the appropriate opportunity. Clearly, the commission did not abuse its discretion in refusing to grant reconsideration.
 {¶ 54} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1