[Cite as *State ex rel. Cleveland Metro. School Dist. v. Indus. Comm.*, 2022-Ohio-2150.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Cleveland Metropolitan
School District,

    Relator,

v.

Industrial Commission of Ohio et al.,

    Respondents.

      :
      :
      :
      :    No.  20AP-139
      :
      :    (REGULAR CALENDAR)
      :
      :

D E C I S I O N

Rendered on June 23, 2022

**On brief:** *Consolo Law Firm*, *Co.*, *LPA*, *Frank Consolo,* and *Horace F. Consolo*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Jacquelyn McTigue,* for respondent Industrial Commission of Ohio.

**On brief:** *Garson Johnson*, *LLC,* and *Grace A. Szubski*, for respondent Marion A. Saddler.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

JAMISON, J.

{¶ 1} Relator, Cleveland Metropolitan School District ("employer"), filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its August 8, 2019 order that granted the request of respondent, Marion A. Saddler ("claimant"), for temporary total disability ("TTD") compensation.

## I. PROCEDURAL HISTORY

{¶ 2}   This matter was referred to a magistrate pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals.  The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended this court deny employer's request for a writ of mandamus.  The magistrate concluded that the commission did not abuse its discretion when it decided to exercise continuing jurisdiction and award claimant TTD compensation because medical reports issued by Chris Modrall, Ph.D., and Patrick Yingling, Psy.D., upon which the commission expressly relied, provided some evidence in support of the decision.  Accordingly, the magistrate recommended we deny employer's request for a writ of mandamus.

## II. OBJECTION

{¶ 3}   Employer filed the following objection to the magistrate's decision:

> The Magistrate made an *assumption* – not a valid legal conclusion supported by evidence – when he decided that the commission acted in its discretion by *apparently* finding Dr. Kaplan's May 28, 2019 report and opinion unpersuasive in light of the review by Dr. Modrall and the reports of Dr. Yingling.

(Emphasis sic.)

## III. DISCUSSION

### A. Objection

{¶ 4}   The commission relied on the medical reports of Drs. Modrall and Yingling in support of the conclusion that substantial aggravation of pre-existing major depressive disorder was a newly diagnosed condition that prevented claimant from returning to her former position as a cleaner.  The magistrate noted that both the district hearing officer ("DHO") and staff hearing officer ("SHO") found the reports of Drs. Modrall and Yingling persuasive.  Dr. Modrall opined the allowance for substantial aggravation of a pre-existing major depressive disorder was a new and changed circumstance, and both Drs. Modrall and Yingling were of the opinion claimant's newly allowed condition prevented her return to work.

{¶ 5}   We note that employer's objection does not directly challenge the magistrate's conclusion that the reports issued by Drs. Modrall and Yingling constitute "some evidence" to support the commission's decision.  (App'x at ¶ 62.)  Rather, employer

argues that that the commission abused its discretion when it disregarded the opposing medical report and opinions submitted by Robert G. Kaplan, Ph.D., without stating its reasons for doing so.

{¶ 6} Employer relies on *State ex rel. Ritzie v. Reece-Campbell, Inc.*, 146 Ohio St.3d 259, 2015-Ohio-5224, in support of its contention. In *Ritzie*, claimant applied for TTD compensation. The only medical evidence of the alleged disability was a report from claimant's treating physician. The commission denied TTD compensation and this court denied relief in mandamus. In affirming this court, the Supreme Court of Ohio ruled that the commission has the discretion to reject uncontroverted medical evidence so long as the commission explains its reason for doing so. *Id.* at ¶ 13.

{¶ 7} Both the commission and claimant argue that *Ritzie* is distinguishable because, in *Ritzie*, the commission rejected the uncontroverted medical evidence of the alleged disability, whereas the commission in this case issued a decision based on conflicting medical evidence. This court has previously distinguished *Ritzie* for this very reason.

{¶ 8} In *State ex rel. Hettinger v. Ferrellgas, Inc.*, 10th Dist. No. 16AP-751, 2017-Ohio-7899, the commission expressly relied on a medical report from Mark E. Reynolds, M.D., in denying relator's permanent total disability ("PTD") application. In relator's subsequent mandamus action, a magistrate of this court found that Dr. Reynolds' opinion was some evidence that relator's allowed psychological condition would not prevent him from sustained remunerative employment. The magistrate also found that the commission was not required to explain why it did not rely on the report of Chad M. Sed, Ph.D., which relator offered in support of his PTD application. Relator objected, arguing *Ritzie* required the commission to discuss Dr. Sed's report and to explain why it was rejected. In concluding *Ritzie* did not require an explanation under the circumstances, we stated:

> [I]n *Ritzie*, the only medical evidence of the alleged disability was from the treating physician. There was no contrary medical evidence before the commission. Under those circumstances, *Ritzie* required the commission to explain why it rejected the only medical report in the file. In the case at bar, however, there was conflicting medical evidence before the commission. Under those circumstances, the commission was only required to state the evidence on which it relied and to

briefly explain why relator was not entitled to PTD compensation.

*Hettinger* at ¶ 5.

{¶ 9} Here, as in *Hettinger,* there was conflicting medical evidence before the commission whether claimant suffered from substantial aggravation of a pre-existing major depressive disorder, whether the condition was a new and changed circumstance, and whether the condition prevented claimant from returning to her former position as a cleaner. Because the commission decided these issues on conflicting medical evidence, the commission was only required to state the evidence on which it relied and to briefly explain why claimant was entitled to TTD compensation. *State ex rel. Metz v. GTC, Inc.*, 142 Ohio St.3d 359, 2015-Ohio-1348, ¶ 14. The commission expressly relied on the medical reports issued by Drs. Modrall and Yingling, and briefly explained its reason for awarding TTD compensation. The commission complied with *Ritzie.*

{¶ 10} Furthermore, to the extent employer argues the commission failed even to consider Dr. Kaplan's report because it was not mentioned either by the DHO or SHO, we note that both decisions specify "[a]ll the evidence was reviewed and considered." (DHO's June 21, 2019 Decision at 1; SHO's Aug. 8, 2019 Decision at 2.)

{¶ 11} For the foregoing reasons, employer's objection is overruled.

## IV. CONCLUSION

{¶ 12} On examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and consideration of employer's objection, we find the magistrate has properly determined the facts and correctly applied the relevant law. Accordingly, we adopt the magistrate's decision as our own, overrule employer's objection, and deny the requested writ of mandamus.

*Objection overruled;*
*writ of mandamus denied.*

SADLER and NELSON, JJ., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned
to active duty under the authority of the Ohio Constitution,
Article IV, Section 6(C).

_____

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Cleveland Metropolitan, School District, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 20AP-139 |
| | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

MAGISTRATE'S DECISION

Rendered on December 1, 2021

*Consolo Law Firm, Co., LPA, Frank Consolo,* and *Horace F. Consolo,* for relator.

*Dave Yost,* Attorney General, and *Jacquelyn McTigue,* for respondent Industrial Commission of Ohio.

*Garson Johnson, LLC,* and *Grace A. Szubski,* for respondent Marion A. Saddler.

IN MANDAMUS

{¶ 13} Relator, Cleveland Metropolitan School District ("employer"), has filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its August 8, 2019, order that granted the request of respondent, Marion A. Saddler ("claimant"), for temporary total disability ("TTD") compensation.

Findings of Fact:

{¶ 14} 1. On January 4, 2010, claimant sustained an injury in the course of and arising out of her employment as a cleaner when she slipped on ice in a parking lot and fell to the ground. Her workers' compensation claim was initially allowed for the following conditions: sprain of neck; sprain lumbar region; herniated disc L4-L5; herniated disc C4-7 with radiculopathy; lumbar bulging disc at L5-S1; herniated disc C4-C5, C5-C6, C6-C7; and psychogenic pain. She subsequently was granted TTD compensation, beginning January 5, 2010.

{¶ 15} 2. Beginning in November 2011, claimant briefly participated in vocational rehabilitation, and her rehabilitation program closed in December 2011. TTD was reinstated beginning December 19, 2011.

{¶ 16} 3. On November 15, 2011, claimant was laid off from her employment with the employer. She was placed on a recall list that was effective for two years, and on September 4, 2012, the employer sent claimant a notice of recall as a cleaner. Although the notice indicated that claimant was required to respond by September 10, 2012, she did not respond until September 11, 2012, and she failed to circle on the returned form whether she would accept or reject the recall offer.

{¶ 17} 4. On June 22, 2015, claimant was examined by Kenneth Gruenfeld, Psy.D., for the only allowed psychological condition in the claim at the time, psychogenic pain. In his July 2, 2015, independent medical examination report, Dr. Gruenfeld made the following findings: (1) claimant has not achieved maximum medical improvement ("MMI"), given her treatment gains noted in the April 1, 2015, physician's report of work ability; (2) claimant's mental-health issues likely do not prevent her from returning to her former position of employment; (3) claimant's mental-health symptoms fall in the mild to moderate range, and she is capable of completing old job tasks as long as they don't trigger her pain condition, which would trigger her depression; (4) given her mental-health issues, she is unlikely to thrive in a moderate to high-stress job setting; she may thrive in a low-stress job setting; (5) claimant's mental-health issues do not prevent her from performing any type of remunerative employment; she can return to her former type of work as long as she has proper timelines to complete job tasks; (6) there is no recommendation for vocational rehabilitation because she can return to her former type of work; (7) she should

be restricted from working in jobs that require physical labor as the pain from the physical labor can retrigger her depression; and (8) claimant's problems with depression could prevent her from returning to the workforce, although given the physical report of work ability cited only mild to moderate impairment in functioning, she can return to the workforce.

{¶ 18} 5. On July 16, 2015, the employer and the Bureau of Workers' Compensation ("BWC") filed motions to terminate TTD.

{¶ 19} 6. On September 3, 2015, the district hearing officer ("DHO") held a hearing on the motions of the employer and the BWC to terminate TTD. In a September 10, 2015, order, the DHO found the following: (1) claimant has reached MMI for the allowed physical and psychological conditions in the claim; (2) the psychological conditions do not prohibit claimant from returning to her former position of employment; (3) the order is based upon the June 30, 2015, medical report of Cynthia Taylor, D.O., and the June 22, 2015, report of Dr. Gruenfeld; and (4) TTD compensation shall terminate for both the allowed physical conditions and psychological conditions.

{¶ 20} 7. Claimant appealed the DHO's order.

{¶ 21} 8. On October 15, 2015, the staff hearing officer ("SHO") held a hearing on claimant's appeal. In an October 20, 2015, order, the SHO found the following: (1) the allowed physical conditions have reach MMI, based upon the June 30, 2015, report of Dr. Taylor; (2) the allowed psychological conditions do not prevent claimant from returning to her former position of employment as a cleaner, based upon the June 22, 2015, report of Dr. Gruenfeld; and (3) TTD is terminated.

{¶ 22} 9. Claimant appealed the SHO's order, but the commission refused the appeal on November 10, 2015.

{¶ 23} 10. In a November 11, 2016, report, Raymond Richetta, Ph.D., found claimant met the criteria for moderate major depressive disorder, and the condition was a direct and proximate result of the allowed physical conditions of the 2010 work injury.

{¶ 24} 11. On November 15, 2016, claimant entered into a rehabilitation agreement with the BWC, and she participated in vocational rehabilitation services. She continued to do so until May 22, 2017, when her vocational rehabilitation file was closed. The November 20, 2016, vocational rehabilitation initial assessment report indicated claimant expressed

a strong, sincere interest in attempting to return to work. The May 30, 2018, vocational rehabilitation closure report indicated that, while claimant put in 100 percent effort during all of her plan services, she is no longer physically able to continue with the program and is no longer feasible and/or ready to return to work given her physical limitations and related pain.

{¶ 25} 12. On February 6, 2018, claimant filed a C-86 motion, requesting allowance of the condition of substantial aggravation of pre-existing major depressive disorder.

{¶ 26} 13. On December 12, 2018, Patrick Yingling, Psy.D., completed a MEDCO-14 physician's report of work ability form, which indicated the following: (1) claimant's previously allowed conditions and newly allowed condition prevented her return to work from March 16, 2018 through the present; (2) claimant's psychological symptoms that serve as a barrier to her return include depressed mood, low energy level, and social withdrawal; (3) claimant continues to be unable to return to work as those same symptoms remain present; and (4) claimant is not suitable for vocational rehabilitation due to psychological symptoms and physical limitations.

{¶ 27} 14. On January 11, 2019, the commission allowed the new condition of substantial aggravation of pre-existing major depressive disorder.

{¶ 28} 15. On March 8, 2019, claimant requested TTD compensation based upon the allowed condition of substantial aggravation of pre-existing major depressive disorder.

{¶ 29} 16. On March 15, 2019, Dr. Yingling completed a MEDCO-14 physician's report of work ability form, which indicated the following: (1) claimant's allowed conditions continue to prevent her return to work; (2) claimant's psychological symptoms that serve as a barrier to her return include depressed mood, insomnia, persistent pain, and social withdrawal; and (3) claimant is not suitable for vocational rehabilitation due to her psychological symptoms and physical limitations.

{¶ 30} 17. On March 18, 2019, Chris Modrall, Ph.D., completed a MEDCO-21 physician review, in which she found the following: (1) the allowance for a substantial aggravation of a pre-existing major depressive disorder, single episode, moderate, was a new and changed circumstance; (2) the records from claimant's psychologists and treating professionals document significant depressive symptoms that would be work prohibitive; (3) even though her psychogenic pain disorder has reached MMI, claimant continues to

have issues with pain that contribute to her depression; (4) based solely on her substantial aggravation of a pre-existing major depressive disorder, single episode, moderate, claimant would not be able to return to her former position of employment; (5) she has not reached MMI on her depressive disorder; (6) the findings would support TTD starting on November 11, 2016, rather than September 4, 2015; (7) substantial aggravation of a pre-existing major depressive disorder, single episode, moderate, was not diagnosed until the letter written by Dr. Richetta on November 11, 2016; and (8) there may have been some symptoms of depression mentioned in notes before that, but no specific disorder was diagnosed before that date.

{¶ 31} 18. On April 2, 2019, the BWC granted claimant TTD compensation. The employer appealed.

{¶ 32} 19. On May 7, 2019, claimant was examined by Robert G. Kaplan, Ph.D., regarding the conditions of psychogenic pain and substantial aggravation of pre-existing major depressive disorder. In his May 28, 2019, report, Dr. Kaplan found the following: (1) claimant met the criteria for diagnoses of pain disorder associated with both psychological factors and a general medical condition (psychogenic pain NEC by adjudication), and major depressive disorder, single episode, moderate severity (substantial aggravation by adjudication); (2) claimant is exaggerating, fabricating, and malingering psychological symptoms and reporting pain and physical limitations in a manner highly similar to individuals who are instructed to magnify their symptoms for secondary gain; (3) claimant is not a reliable reporter of her history, the causes of her psychological symptoms, or the circumstances under which her symptoms occurred; (4) apart from her allowed conditions, other stressors, such as financial difficulties, relationship failures, family deaths, low-average intelligence, traumatic events, unallowed physical conditions, family medical issues, and mocking from family members, have caused an increase in claimant's pre-existing depression and psychological impairment; (5) claimant had ongoing symptoms of major depressive disorder since 2005 and ongoing treatment for major depressive disorder since 2009; (6) although there was a substantial aggravation of major depressive disorder, single episode, moderate allowed in the claim, there has been no new and changed circumstances with regard to the symptoms of the major depressive disorder that would warrant another period of TTD; (7) there was never

a time since 2005 when the major depressive disorder remitted, and she has not developed any new symptoms of major depressive disorder that would require any treatment beyond what she has already received; and (8) substantial aggravation of pre-existing major depressive disorder, single episode, moderate severity is at MMI.

{¶ 33} 20. On June 12, 2019, claimant filed a request for TTD compensation.

{¶ 34} 21. On June 19, 2019, the matter was heard before the DHO on the employer's appeal of the BWC's April 2, 2019, order.

{¶ 35} 22. In a June 21, 2019, order, the DHO vacated the BWC's order and granted TTD, relying on Dr. Modrall's March 18, 2019, physician review and Dr. Yingling's December 12, 2018, and March 15, 2019, reports. The employer appealed.

{¶ 36} 23. On July 30, 2019, the SHO held a hearing on the employer's appeal of the DHO's order.

{¶ 37} 24. On August 8, 2019, the SHO issued an order, in which she found the following: (1) the DHO's June 21, 2019, order is vacated; (2) claimant's request for TTD compensation is granted based upon the psychological condition of substantial aggravation of pre-existing major depressive disorder, in reliance upon the MEDCO-14's and C-84's of Dr. Yingling and the March 18, 2019, review of Dr. Modrall; (3) Dr. Modrall found that the additional allowance of the substantial aggravation of pre-existing major depressive disorder establishes new and changed circumstances to justify the reinstatement of TTD compensation, as he found claimant's depressive symptoms indicate that the newly allowed psychological conditions were work prohibitive; (4) subsequent to the finding of MMI in the October 15, 2015, SHO's order, claimant participated in vocational rehabilitation from November 2016 through May 22, 2017, and the vocational rehabilitation file was closed because claimant was no longer physically able to continue with the program; (5) employer's argument that claimant is not entitled to TTD compensation because she voluntarily abandoned the workforce is unpersuasive, because claimant's participation in vocational rehabilitation shows she attempted to return to the workforce in some capacity, and she could not return to her former position of employment based on the allowed physical conditions and restrictions set forth in the June 30, 2015, report of Dr. Taylor.

{¶ 38} 25. On August 23, 2019, the employer appealed the August 8, 2019, SHO order to the commission. The commission refused the appeal on August 26, 2019.

{¶ 39} 26. On September 17, 2019, the employer filed a request for reconsideration, which included the November 15, 2011, notice of layoff letter from the employer, and the September 4, 2012, notice of recall letter from the employer. The commission denied the request for reconsideration on September 26, 2019.

{¶ 40} 27. On March 5, 2020, the employer filed a complaint for writ of mandamus, requesting that this court vacate the commission's order that granted claimant TTD compensation.

{¶ 41} 28. The magistrate informally delayed a decision in this case until the Tenth District Court of Appeals released two decisions potentially impacting this case, *State ex rel. Walmart, Inc. v. Hixson*, 10th Dist. No. 19AP-323, 2021-Ohio-3802, and *State ex rel. Ohio State Univ. v. Pratt*, 10th Dist. No. 19AP-603, 2021-Ohio-3420.

Conclusions of Law and Discussion:

{¶ 42} The magistrate recommends that this court deny the employer's writ of mandamus.

{¶ 43} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 44} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 45} Pursuant to R.C. 4123.52, "[t]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." R.C. 4123.52(A) contains a

clear and broad grant of continuing jurisdiction to the commission. *State ex rel. Neitzelt v. Indus. Comm.*, 160 Ohio St.3d 175, 2020-Ohio-1453, ¶ 15. However, that jurisdiction is conditioned on specific criteria: (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal. *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 459 (1998). "Even where temporary total disability compensation payments have been previously terminated, R.C. 4123.52 grants the Industrial Commission continuing jurisdiction to award temporary total disability compensation where the claimant has again become temporarily totally disabled." *State ex rel. Bing v. Indus. Comm.*, 61 Ohio St.3d 424 (1991), syllabus. Thus, a new and changed circumstance may justify the reopening of a TTD award that had previously been terminated on MMI grounds. *State ex rel. Chrysler Corp. v. Indus. Comm.*, 81 Ohio St.3d 158 (1998).

{¶ 46} TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) the claimant has returned to work; (2) the claimant's treating physician provides a written statement that the claimant is able to return to the former position of employment; (3) work within the physical capabilities of the claimant is made available by the employer or another employer; or (4) the claimant has reached maximum medical improvement. R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 47} R.C. 4123.56, which was amended by H.B. No. 81, effective September 15, 2020, modified the prior version of R.C. 4123.56 by adding the following entirely new language pertaining to voluntary abandonment:

> (F) If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(F).

{¶ 48} In *Hixson*, in addressing whether a claimant receiving TTD voluntarily abandoned the workforce when she gave formal notice of her intent to retire from her current employer, this court first discussed the evolution of the voluntary-abandonment analysis in TTD compensation cases. This court found that the amended provisions in R.C. 4123.56(F) did not apply retroactively to the case. This court held in *Hixson* that R.C. 4123.56(F), as amended by H.B. No. 81, does not apply to TTD compensation awards in which both the injury and a final adjudication by the commission occurred before the effective date of the new law. This court went on to find the most recent Supreme Court of Ohio case, *State ex rel. Klein v. Precision Excavating & Grading Co.*, 155 Ohio St.3d 78, 2018-Ohio-3890, decided September 27, 2018, applied to the present analysis to ascertain whether the commission abused its discretion in granting TTD compensation. Following *Klein*, this court found that an inquiry regarding the employee's physical capacity to work or whether the employee was still disabled at the date of termination is no longer allowed when the claimant has voluntarily abandoned the workforce.

{¶ 49} In *Klein*, the claimant suffered an industrial accident on November 5, 2014, and a physician's report indicated he was unable to work from that date through January 5, 2015. The claimant requested TTD compensation. The claimant testified before the DHO that he had been planning to move to Florida prior to the injury, he had told others that he planned to move to Florida prior to the injury, and claimant informed the employer that he was moving to Florida on October 31, 2014, nearly one week before the injury. The DHO granted claimant's TTD compensation claim for the closed period of November 6 through 19, 2014, finding that claimant voluntarily terminated his employment on November 20, 2014, for reasons unrelated to the workplace injuries. The order was affirmed by the SHO, and the commission refused additional appeals. Upon a writ of mandamus, this court concluded that, because claimant was medically unable to return to work, he was unable to voluntarily abandon his employment on that date.

{¶ 50} The Supreme Court, overruling aspects of prior case law, reversed this court's decision, reasserting the fundamental tenet of eligibility for TTD compensation that the injury must cause the claimant's loss of earnings. The court in *Klein* explained that "when

a claimant removes himself from employment for reasons unrelated to the work-related injury, he is no longer eligible for temporary-total-disability compensation." *Id.* at ¶ 19, citing *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, ¶ 38. The court further explained that, "In those circumstances, the voluntary abandonment—and not the injury—causes the loss of wages." *Id.* Thus, "an employee who quit[s] his job for reasons unrelated to his workplace injury [i]s ineligible for temporary-total-disability compensation." *Id.* at ¶ 20, citing *State ex rel. McGraw v. Indus. Comm.*, 56 Ohio St.3d 137 (1990). "[I]t would not serve the purpose of temporary-total-disability compensation to award compensation to a worker whose own actions, and not his workplace injury, have prevented his return to his former position of employment." *Id.* at ¶ 22, citing *State ex rel. Ashcraft v. Indus. Comm. of Ohio*, 34 Ohio St.3d 42, 43-44 (1987). The court in *Klein* emphasized that the pertinent issue is whether the claimant abandoned his previous position with the employer of record in the claim, not whether the claimant intended to abandon the workforce entirely. *See Id.* at ¶ 29 (finding that when a workers' compensation claimant voluntarily removes himself from his former position of employment for reasons unrelated to a workplace injury, he is no longer eligible for TTD compensation, even if the claimant remains disabled at the time of his separation).

{¶ 51} This court recently analyzed *Klein* in *Pratt*. In *Pratt*, the claimant submitted her resignation to the employer on June 20, 2017, effective July 5, 2017. After she submitted her resignation but before the effective date of resignation, the claimant sustained a workplace injury and never returned to work for the employer. The claimant was granted TTD compensation from the date of injury, but the employer subsequently filed a motion to terminate TTD. The DHO granted the motion to terminate, finding that all TTD amounts paid for the period after the claimant's resignation letter submission date of June 20, 2017, were improperly paid. The claimant submitted a copy of an employment agreement between the claimant and a new employer, which was dated June 28, 2017. On the claimant's appeal before the SHO, the SHO vacated the DHO's order and granted TTD, finding that the employment offer from the new employer demonstrates that the claimant did not intend to voluntarily abandon the workforce when she announced her resignation from employment with the employer on June 20, 2017. The employer eventually filed a mandamus action in this court, and the matter was heard before a magistrate. The

magistrate issued a decision, in which he found the following, in pertinent part: (1) pursuant to *Klein*, the claimant's physical capacity to work, whether the claimant is still disabled at the date of termination, and the claimant's intent to resume work with another employer are irrelevant to the voluntary abandonment determination; (2) *Klein* requires the commission to consider only whether the claimant has voluntarily abandoned her former position, and not whether she has removed herself from the workforce generally; (3) *Klein* repeatedly and expressly refers to abandonment of the previous position held with the employer that is subject to the claim, without reference to any intent to abandon the workforce entirely; (4) the commission abused its discretion when it considered the claimant's continuing physical limitations and employment prospects and awarded TTD to the claimant for the period after the effective date of her voluntary resignation; and (5) it is recommended that a writ of mandamus issue ordering the commission to vacate its order awarding TTD compensation after July 5, 2017, and enter an order awarding such compensation only up to that date.

{¶ 52} Upon objections, this court affirmed the magistrate's interpretation of *Klein*. The court noted several factual similarities between *Klein* and the case before it and concluded that, under *Klein*, the claimant in *Pratt* was foreclosed from receiving TTD compensation after she had voluntarily abandoned her position on July 5, 2017. The court rejected the commission's contention that the claimant did not voluntarily abandon her position on July 5, 2017. The court also rejected the commission's contention that the claimant did not voluntarily abandon the workforce based upon the employment offer, and found that was not the test. Instead, under *Klein*, a court must look at whether the claimant voluntarily removed herself from her former position of employment, even if the claimant remains disabled at the time of her separation from employment. The court found that the claimant voluntarily removed herself from her former position, despite her injury at the time of separation from employment. The court explained that, in both *Klein* and the case before it, the industrial injury was not the cause of the worker's loss of earnings but, instead, a voluntary decision to leave their respective places of employment. The court found that the magistrate's decision accurately reflected the analysis in *Klein* and applied the phrase "former position of employment" as intended. The court concluded that, under *Klein*,

employment benefits cannot be provided to a claimant that voluntarily removed herself from her former position of employment for reasons unrelated to the workplace injury.

{¶ 53} In the present case, the employer first argues that claimant voluntarily abandoned her job in 2012. The employer contends that claimant was required to respond to the notice of recall by September 10, 2012, but, instead, she responded on September 11, 2012, and did not circle whether she would accept or reject the recall offer. Thus, the employer asserts, because claimant failed to accept recall, she voluntarily abandoned her position of employment with the employer for reasons unrelated to her workplace injury, thereby preventing her from being eligible for TTD compensation.

{¶ 54} Claimant counters that she did not voluntarily abandon her employment with the employer in 2012. Claimant contends she was receiving TTD at the time the employer issued the September 4, 2012, recall letter, and an injured worker cannot abandon a job while receiving TTD, given she was temporarily, totally unable to engage in her former position of employment as a cleaner with the employer from the date of her injury until she was found to have reached MMI on September 3, 2015. In addition, claimant notes that the employer did not submit the notice of layoff letter or recall letter for either the administrative hearing or the third-level appeal to the commission; therefore, the criteria set forth in Industrial Commission Resolution R18-1-06(D)(1) for a reconsideration hearing were not met, and the commission's denial of the request for reconsideration was proper.

{¶ 55} The commission responds to the employer's voluntary-abandonment argument by asserting that the SHO specifically stated in her order that she was not persuaded by the employer's argument because the employer presented no evidence to establish that claimant voluntarily removed herself from her former position of employment for reasons unrelated to her workplace injury, noting that, although claimant did not return to work after the finding of MMI, she did participate in a rehabilitation program based on the limitations resulting from her allowed physical conditions, thereby demonstrating she was attempting to return to the workforce in some capacity. The commission also contends this case is distinguishable from *Klein* in that, in this case, the November 20, 2016, vocational rehabilitation assessment report indicated that claimant had expressed a strong, sincere interest in attempting to return to work, and the May 30, 2018, vocational rehabilitation closure report indicated that while she put in 100 percent

effort during her services, she was no longer able to continue with the program or return to work given her physical limitations and pain. The commission further raises that because the employer's argument regarding the potential voluntary abandonment in 2012 was not raised properly before the commission for consideration at either the DHO or SHO hearing, it should not be considered in mandamus, and for the commission to consider the new argument upon reconsideration would have violated Resolution R18-1-06(D)(1).

{¶ 56} The magistrate cannot reach the merits of the employer's argument on the issue of voluntary abandonment in 2012 because the magistrate agrees with claimant and the commission that the employer's failure to raise this argument and submit to the commission the notice of layoff letter and the notice of recall letter until the request for reconsideration is fatal in mandamus. Resolution R18-1-06(D)(1) provides, in pertinent part:

> D. If the requirements of Sections (A) and (B) are satisfied, hearing officers designated by the Industrial Commission shall review the request for reconsideration pursuant to the following criteria:
>
> 1. A request for reconsideration shall be considered only in the following cases:
>
> a. New and changed circumstances occurring subsequent to the date of the order from which reconsideration is sought. For example, there exists newly discovered evidence which by due diligence could not have been discovered and filed by the appellant prior to the date of the order from which reconsideration is sought. Newly discovered evidence shall be relevant to the issue in controversy but shall not be merely corroborative of evidence that was submitted prior to the date of the order from which reconsideration is sought.

{¶ 57} In the present case, the employer clearly was aware of and in possession of the November 15, 2011, notice of layoff letter and the September 4, 2012, notice of recall letter since the time they were created, and was also well aware of the circumstances surrounding her receipt of both letters and the manner in which she completed the notice of recall letter. As such, neither the letters nor the circumstances surrounding the letters can constitute new and changed circumstances occurring since the DHO and SHO orders. *See State ex rel. Buzzo v. Indus. Comm.*, 10th Dist. No. 06AP-95, 2007-Ohio-941, ¶ 53

(commission did not abuse discretion in refusing to grant reconsideration when relator failed to raise an issue in a timely manner before the DHO and SHO). "Reconsideration is not designed for the convenience of a party who simply fails to raise an issue at the appropriate opportunity." *Id.* Therefore, the magistrate finds that the commission did not abuse its discretion when it failed to grant the employer's request for reconsideration based upon an argument that was not raised and documents that were not submitted before the DHO and SHO.

{¶ 58} The employer next argues that claimant voluntarily abandoned the entire workforce in 2015. The employer contends that Dr. Gruenfeld's June 22, 2015, report conclusively states that claimant's mental health issues do not prevent her from performing any remunerative employment, and from June 22, 2015, until November 11, 2016, when Dr. Richetta diagnosed her with major depressive disorder, claimant failed to seek employment. In fact, the employer argues, between the last time she worked in 2010 and her latest TTD application in 2019, claimant made no effort to re-enter the workforce and, therefore, voluntarily abandoned the entire workforce.

{¶ 59} However, as this court explained in *Pratt*, any argument as to whether the claimant intended to voluntarily abandon the entire workforce was irrelevant to the voluntary-abandonment determination under *Klein*. The court in *Klein* made clear that the test for voluntary abandonment does not involve a question of whether the claimant had any intent to abandon the workforce entirely but, rather, only whether the claimant abandoned her previous position held with the employer that is subject to the claim for reasons unrelated to her workplace injury. Therefore, the magistrate finds the employer's argument with regard to claimant's voluntary abandonment of the entire workforce without merit.

{¶ 60} The employer's final argument is that Dr. Kaplan's May 28, 2019, report makes clear that claimant has been continuously depressed since 2005, five years before the work injury, and has not developed any new symptoms of major depressive disorder that would require additional treatment. Thus, Dr. Kaplan found there had not been any new and changed circumstances warranting another period of TTD that directly and proximately arose from the substantial aggravation of pre-existing major depressive disorder or any other allowed conditions in this claim, and, in fact, found substantial

aggravation of pre-existing major depressive disorder was at MMI. The employer notes that Dr. Kaplan explained that, in 2005, claimant's fiancé died, and she has required psychiatric medications and counseling since that time. She only stopped taking the psychiatric medications because her health insurance would not cover them, not because her depressive symptoms resolved. The employer also points to Dr. Kaplan's finding that there was never a time since 2005 when the major depressive disorder remitted, and she has not developed any new symptoms of major depressive disorder that would require any treatment beyond what she has already received since 2005. Dr. Kaplan also diagnosed claimant with substantial aggravation of pre-existing major depressive disorder directly and proximately caused by stressors other than her employment, including financial problems, relationship problems, family deaths, low average intelligence, psychological trauma due to a miscarriage, hospitalization for hypertension, possible transient ischemic attack, an attack by wasps, unreported health conditions that prevented her from taking psychiatric medications, a granddaughter with osteogenesis, and mocking from her family members.

{¶ 61} Claimant and the commission counter that the commission rejected Dr. Kaplan's May 28, 2019, report in addressing the motion for TTD filed on March 8, 2019. Instead, the commission relied on the March 18, 2019, report of Dr. Modrall and the December 12, 2018, and March 15, 2019, reports of Dr. Yingling to grant the motion for TTD. Claimant and the commission assert that the June 19, 2019, DHO order and the July 30, 2019, SHO order set forth the evidence the commission relied upon, and the SHO gave a brief analysis, thereby satisfying the "some evidence" legal standard. Claimant also argues that: (1) the depression symptoms since 2005, as set forth in Dr. Kaplan's May 28, 2019, report, would not necessarily bar the commission from granting TTD for the condition of substantial aggravation of pre-existing major depressive disorder, because the prior depression symptoms could still be "substantially aggravated"; (2) the newly allowed condition for substantial aggravation of pre-existing major depressive disorder was sufficient for new and changed circumstances to support a new period of TTD beginning May 22, 2017, and the characterization of the depressive disorder as "major" would further establish new and changed circumstances to warrant TTD; and (3) claimant refuted or further explained at both administrative hearings the life stressors listed by Dr. Kaplan,

and the commission had the discretion to reject Dr. Kaplan's report based upon claimant's testimony.

{¶ 62} The employer's contentions raise arguable points. Dr. Kaplan's May 28, 2019, report clearly presents a contrary view of the evidence, a view that contradicts the commission's finding a new period of TTD based upon new and changed circumstances. Dr. Kaplan's May 28, 2019, report also presents the type of evidentiary challenges necessary to support the employer's side of the dispute. However, in this mandamus action, the question is whether there is "some evidence" to support the commission's determination, not whether there exists contradictory evidence in the record or conceivable counterarguments. The present case is not a situation in which there is no evidence to support the commission's findings; thus, the commission has not abused its discretion. There exists some evidence in the record to support the commission's conclusion. Both the DHO and SHO relied upon the reports of Drs. Yingling and Modrall and found them persuasive. Both found that her newly allowed condition prevented her return to work, and Dr. Modrall found that the allowance for substantial aggravation of a pre-existing major depressive disorder was a new and changed circumstance. Although neither Drs. Modrall nor Yingling went into the level of detailed discussion Dr. Kaplan did in his report, their reports still provided the commission with "some evidence" upon which to base its determination, and, as such, there can be no abuse of discretion in this case. Furthermore, as pointed out by claimant, the fact that she may have had prior depression since 2005 does not prohibit the current allowed condition and reinstatement of TTD. The claim was allowed for "substantial aggravation" of pre-existing depression; thus, there could be new and changed circumstances, despite that prior depression symptoms were present since 2005, because those pre-existing depression symptoms had been substantially aggravated. The commission was within its discretion to find Dr. Kaplan's report unpersuasive and apparently did so based upon the competing views expressed by Drs. Modrall and Yingling.

{¶ 63} Accordingly, it is the magistrate's recommendation that this court should deny the employer's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).